UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NICHOLAS J. STEINKE,

    Plaintiff,

v.                                             Case No. 21-cv-1365-bhl

AMBER AGUILERA, *et al.*,

    Defendant.

## SCREENING ORDER

Plaintiff Nicholas J. Steinke, who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights at the Kenosha County Detention Center. The Court previously waived the initial partial filing fee pursuant to 28 U.S.C. §1915(b)(4). Dkt. No. 7. The Court will now screen the complaint.

### SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well

as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

At the time of the relevant events, Steinke was an inmate at the Kenosha County Detention Center (KCDC). Dkt. No. 1 at 1–2. Steinke names as Defendants Amber Aguilera, C.O. Barvuso, John and Jane Doe correctional officers (Doe Correctional Officers), John and Jane Doe nursing staff (Doe Nurses), John Doe the head of KCDC, and John Doe the head of Kenosha County jail. *Id.* at 1. Additionally, Steinke states he is suing all Defendants in their individual and official capacities. *Id.* at 4.

Steinke alleges that he suffered a seizure on June 10, 2021. *Id.* After he "came to" he asked an inmate worker to get a correctional officer so he could request medical attention. *Id.* at 1–2. When C.O. Barvuso came to his cell, Steinke told him that he had a seizure and was injured. *Id.* at 2. Barvuso immediately told Steinke that he would get the nurse. *Id.* Barvuso went back to

2

his desk and called the nurse. *Id.* Steinke alleges that when Barvuso came back to the cell, Barvuso told him that Nurse Amber Aguilera said she would not see him or treat him for his injuries. *Id.* Steinke asked if he could at least get an ice pack, and Barvuso went back to his desk to call the nurse and ask. *Id.* According to Steinke, Barvuso came back and told him that Aguilera said he could not get an ice pack, but he would be seen by the Health Services Unit (HSU) tomorrow morning. *Id.* Steinke claims that he was suffering from back pain and a broken or dislocated pinky finger. *Id.*

According to Steinke, he was not seen by the HSU the following day. *Id.* Steinke alleges that he told numerous Doe Correctional Officers throughout the day about his seizure and alleged injuries, but the Doe Correctional Officers did not call the HSU and he was left in his condition. *Id.* Over the next week, Steinke claims that he would write to the HSU requesting to be seen to no avail. *Id.* Steinke also alleges that during the medication distribution he would tell the Doe Nurses he needed to be seen and show them his injuries. *Id.* at 2–3. Steinke states that the Doe Nurses told him they could not do anything and told him to write an HSU request. *Id.* at 3. Further, Steinke states that he would tell the Doe Correctional Officers about his seizure and show them his injuries, but they told him they could not do anything for him and refused to call the HSU. *Id.* Steinke alleges that after about a week of being ignored and not getting treatment for his alleged injuries, he "snapped" and was eventually taken to the HSU. *Id.* Although he was seen at the HSU, he was not given an X-Ray or splint, and instead was given ice for his pinky finger. *Id.* For relief, Steinke asks for 10 million dollars. *Id.* at 4.

## ANALYSIS

"To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this

3

deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). Before addressing the substance of Steinke's allegations, the Court notes that, to the extent the Court will allow Steinke to proceed against the Defendants, he may do so only in their individual capacities. The difference between official capacity and individual capacity is significant. "Personal-capacity suits seek to impose liability upon a governmental official for actions he takes under color of state law . . .. Official capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). In other words, a personal-capacity suit is appropriate when an official, acting under the color of state law, personally deprives a plaintiff of a federal right. *Id.* On the other hand, an official-capacity suit is appropriate when a person is only executing or implementing the official policy or custom of a government entity. *Id.* Steinke's allegations do not give rise to a reasonable inference that these defendants acted under an official policy or custom. Accordingly, Steinke cannot state a claim against these defendants in their official capacities.

Steinke does not explain whether he was a pretrial detainee or a convicted prisoner while incarcerated at the KCDC. If he was a pretrial detainee, his rights arise out of the Fourteenth Amendment's Due Process Clause; if he was a convicted prisoner, his rights arise out of the Eighth Amendment. *See Miranda v. County of Lake*, 900 F.3d 335, 350-51 (7th Cir. 2018) (explaining that an objective reasonableness standard applies to claims brought by pretrial detainees while a deliberate indifference standard applies to claims brough by prisoners). The Court need not determine, at this stage of the litigation, whether Steinke was a pretrial detainee or a convicted

prisoner. Instead, it will analyze his claim under the Fourteenth Amendment standard, which is more favorable to Steinke, and will give the parties the opportunity to file appropriate motions, if it is later determined that the Eighth Amendment should apply instead.

To state a claim under the Fourteenth Amendment, Steinke must allege facts from which the Court can infer that: (1) he had an objectively serious medical condition; and (2) the defendants' response to the medical condition was objectively unreasonable. *Williams v. Ortiz*, 937 F.3d 936, 942–43 (7th Cir. 2019). With respect to the second prong, Steinke must allege that the defendants acted "purposefully, knowingly, or perhaps even recklessly" when considering the consequences of his conduct. *Id*. (quoting *Miranda*, 900 F.3d at 353). Negligence or gross negligence does not meet this standard. *McCann v. Ogle Cnty.*, 909 F.3d 881, 886 (7th Cir. 2018). "This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *Williams*, 937 F.3d at 942–43 (quoting *McCann*, 909 F.3d at 886).

Steinke alleges that he suffered a seizure and a broken pinky, the Court will assume Steinke's allegations are true and, therefore, at the screening stage the Court will presume that he has satisfied the objectively serious medical condition prong. Steinke's alleges that Nurse Aguilera would not see him, treat him, or give him an ice pack for his injuries when Barvuso called her and informed her of Steinke's alleged seizure and injuries. Additionally, Steinke alleges that he told the Doe Nurses and Doe Correctional Officers that he needed to be seen by the HSU and would show them his injuries. Steinke states that the Doe Nurses told him they could not do anything and told him to write an HSU request and the Doe Correctional Officers told him they could not do anything for him and refused to call the HSU. Whether the actions from Nurse

5

Aguilera, Doe Nurses, and Doe Correctional Officers are objectively unreasonable is a fact-intensive inquiry, and the assessment of those facts must be left for a later time. At the screening stage, the Court finds that Steinke has sufficiently stated a Fourteenth Amendment unreasonable medical care claim against Nurse Aguilera, Doe Nurses, and Doe Correctional Officers.

However, Steinke has failed to state a claim against Barvuso because none of the alleged facts attach liability to him. Instead, the complaint shows that Barvuso was responsive to Steinke's requests and called the HSU on his behalf. Barvuso had no control over whether or not Steinke received medical care, the only thing he could do was ask, and he did. Thus, Steinke has not alleged that Barvuso did not provide him objectively reasonable medical care. Therefore, Steinke's claims against Barvuso will be dismissed.

Further, Steinke has failed to state a claim against the John Doe head of Kenosha County Jail (KCJ) because Steinke was not at the KCJ when the alleged events occurred. Therefore, Steinke has failed to allege any facts that attach liability and, therefore, the Court will dismiss Steinke's claims against the John Doe head of KCJ.

Lastly, Steinke has also failed to state a claim against the John Doe head of KCDC. Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional violation." *Vance*, 97 F.3d at 991. Because there is no vicarious liability under §1983, supervisors are not liable for the alleged misconduct of their subordinates, employers are not liable for the alleged misconduct of their employees, and employees are not liable for the alleged misconduct of their co-workers. *See Pacelli v. deVito*, 972 F.2d 871, 877 (7th Cir. 1992). The only time a supervisor will be held liable for a subordinate's misconduct is if the supervisor is personally involved by directing or consenting to the misconduct. For example, the supervisor "must know about the

6

Case 2:21-cv-01365-BHL    Filed 02/08/22    Page 6 of 9    Document 9

Aguilera, Doe Nurses, and Doe Correctional Officers are objectively unreasonable is a fact-intensive inquiry, and the assessment of those facts must be left for a later time. At the screening stage, the Court finds that Steinke has sufficiently stated a Fourteenth Amendment unreasonable medical care claim against Nurse Aguilera, Doe Nurses, and Doe Correctional Officers.

However, Steinke has failed to state a claim against Barvuso because none of the alleged facts attach liability to him. Instead, the complaint shows that Barvuso was responsive to Steinke's requests and called the HSU on his behalf. Barvuso had no control over whether or not Steinke received medical care, the only thing he could do was ask, and he did. Thus, Steinke has not alleged that Barvuso did not provide him objectively reasonable medical care. Therefore, Steinke's claims against Barvuso will be dismissed.

Further, Steinke has failed to state a claim against the John Doe head of Kenosha County Jail (KCJ) because Steinke was not at the KCJ when the alleged events occurred. Therefore, Steinke has failed to allege any facts that attach liability and, therefore, the Court will dismiss Steinke's claims against the John Doe head of KCJ.

Lastly, Steinke has also failed to state a claim against the John Doe head of KCDC. Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional violation." *Vance*, 97 F.3d at 991. Because there is no vicarious liability under §1983, supervisors are not liable for the alleged misconduct of their subordinates, employers are not liable for the alleged misconduct of their employees, and employees are not liable for the alleged misconduct of their co-workers. *See Pacelli v. deVito*, 972 F.2d 871, 877 (7th Cir. 1992). The only time a supervisor will be held liable for a subordinate's misconduct is if the supervisor is personally involved by directing or consenting to the misconduct. For example, the supervisor "must know about the

conduct and facilitate it, approve it, condone it, or turn a blind eye" for fear of what he or she might see. *Id.* (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988)). "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Jones*, 856 F.2d at 992. Steinke does not allege that the John Doe head of KCDC was personally involved in his medical care, and he does not allege that he knew about the conduct of Nurse Aguilera, Doe Nurses, and Doe Correctional Officers and facilitated it, approved it, condoned it, or turned a blind eye to it. Accordingly, Steinke has failed to allege sufficient facts to attach liability to John Doe head of KCDC and, therefore, the Court will dismiss Steinke's claims against the John Doe head of KCDC.

## CONCLUSION

The Court finds that Steinke may proceed on a Fourteenth Amendment unreasonable medical care claim against Nurse Aguilera, Doe Nurses, and Doe Correctional Officers. Because Steinke is suing John and Jane Doe defendants, he will have to use discovery (interrogatories and/or document requests) to learn John and Jane Does' names. Once he learns John and Jane Does' names, he must file a motion to substitute his name for the Doe placeholder. The Court will then replace the Doe placeholder with the John and Jane Doe name and will order him or her to be served with the complaint. However, Steinke may not serve discovery requests until after Nurse Aguilera responds to his complaint and after the Court enters a scheduling order setting deadlines for discovery and the filing of dispositive motions. Nurse Aguilera does not have to respond to discovery requests served before the court enters a scheduling order.

**IT IS THEREFORE ORDERED** that Defendants C.O. Barvuso, John Doe head of KCDC, and John Doe head of KCJ are **DISMISSED** from this case.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint and this order upon Amber Aguilera pursuant to Federal Rule of Civil Procedure 4. Steinke is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2)–(3). Although Congress requires the Court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The Court is not involved in the collection of the fee.

**IT IS FURTHER ORDERED** that Nurse Aguilera shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that Steinke must pay the $350.00 balance of the filing fee over time as he is able. His payments shall be clearly identified by the case name and number assigned to this action. Pugh may mail his payments to the Clerk's Office at Office of the Clerk, United States District Court, Eastern District of Wisconsin, 362 United States Courthouse, 517 E. Wisconsin Avenue, Milwaukee, Wisconsin 53202.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that Steinke must submit the original document for each filing to the Court to the following address:

>  Office of the Clerk
>  United States District Court
>  Eastern District of Wisconsin
>  362 United States Courthouse
>  517 E. Wisconsin Avenue
>  Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Steinke is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin on February 8, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge